**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Hancock Leasing Company LLC, | ) | Case No. 3:26-cv-00446 |
| | ) | |
| Plaintiff, | ) | Judge Jack Zouhary |
| | ) | |
| v. | ) | **DEFENDANT SOLVENZ SERVER** |
| | ) | **FARMS IV, LLC'S MOTION TO** |
| Solvenz Server Farms IV, LLC, et al. | ) | **DISMISS WITH MEMORANDUM IN** |
| | ) | **SUPPORT** |
| Defendants. | ) | |

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant Solvenz Server Farms IV, LLC ("Solvenz") hereby moves for an order dismissing with prejudice the complaint ("Complaint") filed by Plaintiff Hancock Leasing Company LLC ("Plaintiff' or "Hancock") based on lack of personal jurisdiction.

## INTRODUCTION

This case presents a straightforward question: may a court exercise personal jurisdiction over an out-of-state defendant, sued by an out-of-state plaintiff, based solely on a promise to perform in the forum state when the Complaint itself makes clear that the defendant performed no work whatsoever in Ohio? This Court should find that it cannot.

This breach of contract case involves three (3) non-Ohio residents.  The contracts at issue were neither executed in, nor performed in, Ohio. The contract contains no consent to jurisdiction in Ohio and is governed under New York law. Put simply, the only connection to Ohio is the work which Plaintiff alleges *was not performed*. To be clear, Plaintiff's Complaint alleges complete nonperformance of a construction contract—not partial performance or defective work.

Solvenz is not subject to general jurisdiction in Ohio because it is a limited liability company formed under the laws of Delaware, with its sole member located in Texas, and it is not

otherwise "at home" in Ohio. Solvenz is not subject to specific jurisdiction in Ohio because Plaintiff's claims do not arise from or relate to any contact between Solvenz and Ohio. To the contrary, the Complaint's demand for a full refund is based on allegations that non-resident Solvenz failed to perform—at all—under the agreement upon which Plaintiff's claims against Solvenz are based ("Turnkey Agreement").

For these reasons, this Court lacks personal jurisdiction over Solvenz and this case should be dismissed.

## BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS

On December 19, 2025, non-Ohio-resident Plaintiff filed the Complaint against non-Ohio-resident Solvenz and a separate non-Ohio (and non-US) resident, Hypertec Construction, Inc. ("Hypertec").

Plaintiff "is a limited liability company organized and existing under the laws of the State of Delaware." (Complaint ("Compl.") ¶ 8). Plaintiff is a wholly owned subsidiary of MARA USA Corp., a Nevada corporation with its principal place of business in Florida. (*See* ECF No. 15 (Plaintiff's Corporate Disclosure Statement) ¶¶ 1-3).

Solvenz is "a limited liability company organized and existing under the laws of the State of Delaware." (Compl. ¶ 9).  Solvenz's sole member is an individual who resides in Texas.  (ECF No. 5 (Solvenz's Corporate Disclosure Statement) ¶ 1; April 8, 2026 Declaration of Richard McCrea attached hereto as Exhibit A ("McCrea Decl.") ¶ 2). Solvenz has no offices, employees, property, or bank accounts located in Ohio. (McCrea Decl. ¶ 3).   None of Solvenz's employees reside in Ohio. Solvenz has never employed an Ohio resident. (McCrea Decl. ¶ 4).

Hypertec is also a non-Ohio-resident as it is "incorporated under the laws of Canada." (Compl. ¶ 10; *see also* ECF No. 1 (Notice of Removal) ¶ 15).

The Complaint alleges that in 2024, Plaintiff entered into a lease for a 28-acre property in Findlay, Ohio. (Compl. ¶ 10). The Complaint goes on to allege that Plaintiff and Solvenz entered the Turnkey Agreement on October 2, 2024, whereby "Solvenz agreed to construct for [Plaintiff] a fully operational and ready-to-use data center facility in Findlay, Ohio." (Compl. ¶ 2). The Turnkey Agreement contains a choice of law provision establishing that New York law exclusively governs the Turnkey Agreement. (Compl. ¶ 14).

The Turnkey Agreement was drafted, negotiated, and executed by both parties in Texas. (McCrea Decl. ¶¶ 5-8). The parties traveled to Ohio to conduct a site visit. But the visit occurred in August 2024, prior to the execution of the Turnkey Agreement. (McCrea Decl. ¶ 6). And, as explained below, a personal visit to the forum state is not sufficient to subject a nonresident defendant to suit there if the underlying claims do not arise from that specific visit.

The Complaint alleges that Plaintiff "paid Solvenz $4,760,703.22 for professional installation services and paid Hypertec $23,803,516.12 for equipment", and did so via a wire transfer, but "Solvenz and Hypertec simply failed to perform their contractual obligations." (Compl. ¶¶ 4, 5, 27, 29). The Complaint further alleges that "[i]n exchange for its substantial payments, [Plaintiff] was entitled to receive a turnkey facility with Fixed Assets installed on the property which were the sole property of [Plaintiff], free and clear of any liens or other encumbrances." (Compl. ¶ 22).  With respect to Solvenz, Plaintiff alleges that by "failing to construct, procure, and install the Fixed Assets and deliver to [Plaintiff] a turnkey facility, Solvenz has breached the Turnkey Agreement, including its express terms and the implied covenant of good faith and fair dealing." (Compl. ¶ 38). In short, the Complaint makes clear that Solvenz did not actually perform **any** work in Ohio pursuant to the Turnkey Agreement. (*See generally*, Compl.).

3

In its pursuit of damages, Plaintiff seeks at least $28,564,219.34 from Solvenz, consisting of: (1) the entire amount Plaintiff directly paid to Solvenz—$4,760,703.22; plus (2) the entire amount Plaintiff directly paid to Hypertec—$23,803,516.12; plus (3) additional amounts associated with harm to Hancock's business, including lost profits. (Compl. ¶ 39.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff bears the burden of showing the court has personal jurisdiction over a defendant. *Maxitrate Tratamento Termico e Controles v. Super Sys.*, 617 F. App'x 406, 407 (6th Cir. 2015). Federal courts evaluating motions challenging jurisdiction have "the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion." *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005). "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 434 (6th Cir. 2006).

A court may exercise personal jurisdiction through general jurisdiction or specific jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255, 262 (2017). The exercise of general jurisdiction over a corporation is limited to the place where "'the corporation is fairly regarded as at home.'" *See id*. (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U. S. 915, 924 (2011)). In contrast, specific jurisdiction requires "'an affiliation between the forum and the underlying controversy, principally, [an]

4

activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *See id*. (quoting *Goodyear*, 564 U.S. at 919).

In federal diversity cases, "when Ohio's long-arm statute is the basis for personal jurisdiction,[1] the personal jurisdiction analysis requires separate discussions of whether the defendant is amenable to suit under Ohio's long-arm statute and whether due process requirements of the Constitution are met." *Walker v. Concoby*, 79 F. Supp. 2d 827, 831 (N.D. Ohio 1999).

Thus, even if Ohio's long-arm statute is satisfied, the exercise of personal jurisdiction must still comport with the due process requirements of the Fourteenth Amendment, including that the defendant have "minimum contacts" with the forum, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "The first—and dispositive—inquiry in this case is whether the nonresident defendant corporation purposefully availed itself of the privilege of 'acting in' Ohio or 'causing a consequence' in Ohio." *Highway Auto Sales v. Auto-Konig of Scottsdale*, 943 F. Supp. 825, 830 (N.D. Ohio 1996). A "finding of 'purposeful availment' turns on whether [the defendant's] connections with Ohio are either (1) 'substantial' or 'significant' enough such that [the defendant] should have 'reasonably' anticipated being haled into an Ohio court *or* (2) whether defendant created 'continuing obligations' between himself ***and the residents*** of the forum." *Id*. (emphasis added). In assessing whether the burden is met, the Court will use a "highly realistic approach" that looks to "the terms of the contract and the parties' actual course of dealing" in conducting its jurisdictional inquiry. *Burger King Corp. v. Rudzewicz*, 471 U.S.

---

[1] There are nine (9) enumerated subsections within Ohio's long-arm statute on which a plaintiff can rely to assert that specific jurisdiction exists over a foreign defendant. The Complaint is void of any mention of Ohio's long arm statute.

462, 479 (1985); *Thomas v. Dykstra*, 309 F. Supp.3d 480, 483 (N.D. Ohio 2018); *Faurecia Exhaust Sys., Inc. v. Walker*, 464 F. Supp. 2d 700, 704 (N.D. Ohio 2006).

## ARGUMENT

This Court lacks both general and specific personal jurisdiction over non-Ohio-resident, Solvenz.

**I.      Solvenz is Not Subject to General Jurisdiction in Ohio Because it is a Delaware Limited Liability Company, Whose Sole Member is a Texas Resident, and it is Not Otherwise "at home" in Ohio.**

A court may exercise general jurisdiction over a foreign defendant whose "affiliations with the state are so 'continuous and systematic' as to render [it] essentially at home in the forum." *Goodyear*, 564 U. S. at 919 (quoting *Int'l Shoe*, 326 U.S. at 371). A corporate defendant's "paradigm all-purpose forums" for purposes of general jurisdiction are its place of incorporation and its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citing *Goodyear*, 564 U.S. at 924).

Here, it is undisputed that Solvenz is an LLC formed under the laws of Delaware, whose sole member resides in Texas. (Compl. ¶ 9; Solvenz's Corporate Disclosure Statement ¶ 1; McCrea Decl. ¶ 2). Accordingly, the Court may only exercise general jurisdiction over Solvenz if the "exceptional" circumstances described in *Daimler* are present—where a defendant's operations in the forum are "so substantial and of such a nature as to render the corporation at home in [Ohio]." *Daimler*, 571 U.S. at 139 n. 19.

Plaintiff has not demonstrated that this is an "exceptional case" pursuant to which Solvenz's forum contacts "render [it] at home" in Ohio. The Complaint does not mention Solvenz having *any* contact with Ohio. Indeed, the Complaint is void of allegations concerning whether Solvenz has had any contacts with Ohio—let alone substantial contacts—sufficient to render it "at home" here. Solvenz was not formed under the laws of Ohio, nor does it maintain offices,

6

employees, property, or even a bank account in Ohio. (Compl. ¶ 9; McCrea Decl. ¶ 3).  Simply put, there is no other special relationship between Solvenz and the state of Ohio that would render it at home here.  Therefore, Solvenz is not subject to general jurisdiction in Ohio.

**II.      Exercising Personal Jurisdiction over Solvenz in Ohio Violates Due Process**

Traditionally, determining whether a court has personal jurisdiction over a nonresident defendant, required courts to follow a two-step analysis, (1) determining whether the defendant is amenable to service of process under the forum state's long-arm statute, and (2) determining whether the exercise of jurisdiction would deny the defendant due process. *See Jarmoszuk v. Farm Credit of Florida*, No. 1:13CV0475, 2013 WL 3947687, at *4 (N.D. Ohio July 31, 2013). But in 2020, the Ohio General Assembly amended the state long arm statute, allowing courts to "exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." *See* Ohio Rev. Code Ann. § 2307.382(C) (eff. Apr. 7, 2021). "Ohio's state and federal courts disagree on whether this amendment now extends Ohio long-arm jurisdiction" to the limits of the Fourteenth Amendment. *Angel's Dream, LLC v. Toledo Jet Center, LLC*, 721 F.Supp.3d, 601, 609 (N.D. Ohio 2024). Nevertheless, whether analyzed under the traditional two-step framework or under a coextensive approach, the exercise of personal jurisdiction fails here because it would violate due process.

To exercise personal jurisdiction over an out-of-state defendant, consistent with the Due Process Clause, the nonresident defendant must have sufficient minimum contacts with the forum state such that the exercise of jurisdiction over the defendant does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe.*, 326 U.S. at 316. It requires that a defendant have "purposefully established 'minimum contacts' in the forum State." *Burger King*, 471 U.S. at 474 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). The Sixth Circuit has set forth a three-part test for analyzing whether a non-resident defendant has made sufficient contacts in the forum state to

support personal jurisdiction. *See Bren Ins. Servs., Inc. v. Envision Pharm. Servs., LLC*, No. 5:20-cv-1802, 2022 WL 5160746, at \*5 (N.D. Ohio Oct. 5, 2022). First, a nonresident defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state. *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Next, the cause of action must arise from the defendant's activities in the forum state. *Id.* Finally, the defendant's acts, or the consequences caused by the defendant, must have a substantial enough connection with the forum to make the exercise of jurisdiction reasonable. *Id.*

### A. Solvenz Did Not Purposefully Avail Itself to Ohio.

The "purposeful availment" prong is the "'*sine qua non* for in personam jurisdiction.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (quoting *S. Mach.*, 401 F.2d at 381–82). A defendant satisfies the "purposeful availment" element when its contacts create a "substantial connection" with the forum such that the defendant "should reasonably anticipate being haled into court there." *Special Aviation Sys., Inc. v. Aircraft Structures Int'l Corp.*, 323 F. Supp. 2d 839, 845 (N.D. Ohio 2004) (internal quotation marks and citation omitted). Merely entering into a contract with a resident of the forum state does not constitute a substantial connection to the forum. *See Bren. Ins. Servs.*, 2022 WL 5160746 at \*5. Instead, courts look at prior negotiations, future consequences, and the terms of the contract. *Id.*

#### 1. The parties' prior negotiation all occurred outside Ohio.

It is well established that "[i]f the only connection between an out-of-state defendant and the forum state is the mere fact that defendant contracted and communicated with a company who chose the forum state as its home, then asserting personal jurisdiction over the defendant in the forum state is improper." *Id.* Here, however, the connection is even more attenuated; Solvenz did not contract with an Ohio company at all, the Turnkey Agreement was exclusively between two out-of-state parties. (Compl. ¶¶ 8-9; Plaintiff's Corporate Disclosure Statement ¶¶ 1-3; Solvenz's

Corporate Disclosure Statement ¶ 1; McCrea Decl. ¶ 5). And the Complaint does not allege Solvenz: (a) negotiated or signed the Turnkey Agreement in Ohio; (b) partially performed construction in Ohio; or even (c) collected money from Plaintiff in Ohio. Instead, Solvenz negotiated the Turnkey Agreement outside of Ohio, executed the agreement outside Ohio, and the money Plaintiff alleges to have wired to Solvenz went from a bank account located outside of Ohio to a bank account located outside of Ohio. The parties' prior negotiations show that Solvenz did not create a substantial connection with Ohio.

> 2. *Solvenz's alleged breach of the Turnkey Agreement did not create future consequences in Ohio.*

There are no consequences in Ohio because, as the Complaint makes clear, Solvenz never performed under the Turnkey Agreement *at all*. Solvenz did not break ground in Ohio or deliver any products to the state, even if it allegedly contracted to do so. Indeed, the at-issue parcel of land in Ohio is the same now as it was before the Turnkey Agreement was entered into. Nor did Solvenz solicit its services to Ohio residents; the Turnkey Agreement was the result of Plaintiff (a Florida and Nevada resident) agreeing to pay Solvenz (in Texas) to provide services. (McCrea Decl. ¶ 5). There have simply been no consequences in Ohio. In fact, the only way Plaintiff can succeed on its claim for damages is if Solvenz did not perform at all under the Turnkey Agreement, meaning Solvenz never directed **any activities** at Ohio. (McCrea Decl. ¶¶ 11-13; Compl. ¶ 27); *See also Nationwide Life Ins. Co. v. Hampton Supply, Inc.*, 829 F. Supp. 915, 917-918 (S.D. Ohio 1993) (holding that an Ohio corporation's payments to a nonresident corporate entity did not result in connections to Ohio so substantial that the defendant could have anticipated being subject to the jurisdiction of Ohio courts).

As part of the pre-motion meet-and-confer process, Plaintiff identified one direct contact Solvenz had with Ohio related to the Turnkey Agreement, a site visit in which some of Solvenz's

agents traveled to the site prior to finalizing the Turnkey Agreement. But one visit to the forum state does not create the kind of deliberate, substantial connection required by due process. *See Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 152 (6th Cir. 1997) (holding that "a personal visit by representatives of the defendant who came to Michigan to sign the contract" was not sufficient to subject the defendant to suit in Michigan).

> 3. *The terms of the Turnkey Agreement alone do not establish personal jurisdiction.*

The Turnkey Agreement was supposed to be performed in Ohio. But the case law is clear, an out-of-state defendant's bare contractual obligation to perform in the forum—without additional purposeful contacts such as partial performance thereunder—does not satisfy the minimum-contacts requirement for personal jurisdiction. *Dykstra*, 309 F. Supp. 3d at 487 ("Even the existence of a contract with an Ohio party does not automatically establish purposeful availment."); *Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.") (emphasis in original); *Int'l Shoe*, 326 U.S. at 319 ("the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative … ***Whether due process is satisfied must depend rather upon the quality and nature of the activity*** in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.") (emphasis added). It is well established that "the mere existence of a contract between [an out of state defendant] and an Ohio citizen … is insufficient to confer personal jurisdiction over [the out of state defendant]." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir.

10

2000). In short, the Turnkey Agreement alone is insufficient for this court to exercise personal jurisdiction over Solvenz.

In sum, the Complaint's allegations are insufficient to confer jurisdiction over Solvenz—there is simply no substantial connection "between the forum and the underlying controversy." *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (internal quotations omitted). For this reason alone, the Court lacks personal jurisdiction over Solvenz. *See Herold v. Venetis*, 226 N.E.3d 1092, 1106 (Ohio Ct. App. 2023) ("Accordingly, we find that [plaintiff] has failed to establish a 'substantial connection' between the Defendants and the state of Ohio. Due to this failure, we need not separately consider whether exercising jurisdiction would offend 'fair play and substantial justice.'").

> B.   Plaintiff's Claims Do Not Arise Out of or Relate to Solvenz's Activities in the State of Ohio.

Even if Plaintiff had established that Solvenz purposefully availed itself in Ohio, it must also demonstrate that the cause of action "arises from" Solvenz's activities in Ohio—it has not done so. *See S. Mach. Co.*, 401 F.2d at 381.

As the Supreme Court of Ohio has explained:

Even when purposeful availment has occurred, personal jurisdiction extends only to certain cases: ***the plaintiff's claims must 'aris[e] out of or relat[e] to the defendant's contacts' with the forum state***. In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation.' ***When there is no connection between the plaintiff's claims and the nonresident defendant's contacts with the forum state, specific jurisdiction is lacking regardless of the extent of the defendant's unconnected activities in the state***.

*LG Chem, Ltd. v. Goulding*, 167 Ohio St. 3d 488, 491-92 (2022) (citations and alterations omitted) (emphasis added).

In other words, "[t]he 'arising from' requirement is satisfied when 'the operative facts of the controversy arise from the defendant's contacts with the state.'" *Bren Ins. Servs*, 2022 WL 5160746 at *7 (quoting *Calphalon*, 228 F.3d at 723–24). Here, the Complaint makes clear that Solvenz failed to perform ***at all*** under the Turnkey Agreement—*i.e.*, Solvenz was supposed to deliver a completed construction project in Ohio but never showed up in Ohio to deliver as Plaintiff expected. (*See* Compl. ¶¶ 2, 4-5). In short, the Complaint alleges that the controversy arose because Solvenz ***failed*** to make contacts with the state. Specifically, Plaintiff alleges it "paid Solvenz $4,760,703.22 for professional installation services and paid Hypertec $23,803,516.12 for equipment", but "Solvenz and Hypertec simply failed to perform their contractual obligations." (Compl. ¶¶ 4-5). Similarly, Plaintiff alleges that "[i]n exchange for its substantial payments, [Plaintiff] was entitled to receive a turnkey facility with Fixed Assets installed on the property which were the sole property of [Plaintiff], free and clear of any liens or other encumbrances." (Compl. ¶ 22). Accordingly, Plaintiff seeks to recover from Solvenz one hundred percent (100%) of the money Plaintiff allegedly paid both Solvenz and Hypertec for ***failing*** to perform in Ohio. (*See* Compl. ¶ 39).

When a "breach of contract action … is … based on the *absence* of a transaction from Defendant to Plaintiff" the cause of action necessarily did not ***arise from*** conduct in the forum state. *See Style Stitch, Inc. v. Avyan Grp. LLC*, No. 1:23-cv-10701, 2025 WL 2710105, at *6 (S.D.N.Y. Sept. 23, 2025) (emphasis in original). In an analogous case, the Second Circuit held that New York lacked personal jurisdiction over a foreign bank that contracted to transfer funds to New York but failed to do so. *see Raad v. Bank Audi S.A.L.*, No. 24-840-cv, 2025 WL 1214139, at *2 (2d Cir. Apr. 28, 2025). That is because "[a]t bottom, the New York transaction, however ardently promised, did not occur." *Id.* So too here. If Solvenz did not perform under the Turnkey

Agreement even partially (as the Complaint alleges), then Plaintiff's causes of action could not possibly "arise from" Solvenz's conduct in Ohio.

Plaintiff now has a critical choice to make—it must either: (a) admit that it cannot allege any meaningful contacts between Solvenz and Ohio, because Solvenz did not perform at all; or (b) admit that the damages it seeks are wrongfully inflated because Solvenz at least partially performed.

C.     Asserting Personal Jurisdiction of Solvenz in Ohio Would be Unreasonable.

Finally, even if Plaintiff had established the purposeful availment and "arising from" prongs, it is still required to show that it would be reasonable for this Court to assert personal jurisdiction over Solvenz. Reasonableness is determined by the factors laid out in *Asahi Metal Indus. Co., Ltd v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987), which include: (1) the burden on the defendant; (2) the interest in the forum state; and (3) plaintiff's interest in obtaining relief. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996). Courts must also consider "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal*, 480 U.S. at 113 (internal quotation marks and citation omitted).

Solvenz would be substantially burdened by litigating this case in Ohio, as outlined above. Solvenz is a limited liability company formed under the laws of Delaware, with its sole member located in Texas. (Solvenz's Corporate Disclosure Statement ¶ 1; McCrea Decl. ¶ 2). Solvenz does not have any physical presence or property in Ohio, nor are any of its employees located in Ohio. (McCrea Decl. ¶¶ 3-4). All of Solvenz's witnesses, property, and evidence are located outside the state. (McCrea Decl. ¶¶ 3-4).

Further, Ohio has no interest in adjudicating this case because neither party is an Ohio resident. Indeed, Plaintiff (a resident of Florida and Nevada) seeks monetary damages from

Solvenz (a Texas resident) for money paid outside of Ohio. (*See generally* Compl.). And even if it could be argued that Ohio has an interest in resolving disputes related to construction projects to be performed in Ohio, here, the project site was not altered as a result of Solvenz's alleged contract breach. Indeed, the project site is the same today as it was before the Turnkey Agreement was entered. Ohio simply has not been affected by the allegations in the Complaint. Nor does Plaintiff have an interest in obtaining relief in Ohio. Plaintiff is a Florida and Nevada resident who can pursue claims against Solvenz in jurisdictions outside Ohio, such as Texas—where Solvenz is a resident and *where both Parties* negotiated and executed the Turnkey Agreement.

The final two (2) factors involving the interstate judicial system's interest in obtaining the most efficient resolution and the shared interest in furthering social policies weigh in favor of dismissal. Texas, Florida, and Nevada have interest in resolving this dispute between their respective residents. New York also has an interest in resolving this dispute, as the Parties agreed that disputes arising from the Turnkey Agreement must be decided under New York law. Because this lawsuit does not involve any Ohio citizens or companies, the interests of Florida, Nevada and Texas outweigh Ohio's interest, if any, in this case. There is no doubt that this dispute could be more efficiently resolved in Texas where Solvenz is a resident, where the Turnkey Agreement was negotiated and executed, and where the witnesses and evidence are located.

**CONCLUSION**

For the foregoing reasons, Defendant Solvenz Server Farms IV, LLC respectfully requests that the Court enter an Order: (i) dismissing the Complaint with prejudice as against Defendant Solvenz Server Farms IV, LLC; (ii) awarding Defendant Solvenz Server Farms IV, LLC all attorneys' fees, costs, and expenses incurred with litigating against this futile lawsuit; and (iii) any other and further relief the Court deems just and proper.

Date: April 8, 2026                                  Respectfully submitted,


                                                     /s/ Thomas P. Dillon
                                                     Thomas P. Dillon (0059899)
                                                     Jeff M. Smith (0096018)
                                                     **SHUMAKER, LOOP & KENDRICK, LLP**
                                                     1000 Jackson Street
                                                     Toledo, OH 43604
                                                     Telephone:     (419) 241-9000
                                                     Facsimile:     (419) 241-6894
                                                     Email:         tdillon@shumaker.com
                                                                    jmsmith@shumaker.com

                                                     Michelle N. Lipkowitz (admitted *pro hac vice*)
                                                     Castell Abner, III (admitted *pro hac vice*)
                                                     **MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
                                                     555 12th Street, NW
                                                     11th Floor
                                                     Washington, DC 20004
                                                     (202) 434-7300
                                                     MNLipkowitz@Mintz.com
                                                     CAbner@Mintz.com
                                                     *Attorneys for Defendant*
                                                     *Solvenz Server Farms IV, LLC*

15

## ARTIFICIAL INTELLIGENCE DISCLOSURE

Pursuant to Section 3 of the Court's Civil Case Management Procedures, Defendant Solvenz hereby discloses that artificial intelligence ("AI") tools were utilized in the preparation of this filing solely for purposes of proofreading and formatting. No AI tools were used to generate substantive legal arguments or analysis contained herein.

Undersigned counsel certifies that all legal citations in this filing have been independently reviewed and verified for accuracy by counsel.

Date: April 8, 2026                                            Respectfully submitted,


*/s/ Thomas P. Dillon*
Thomas P. Dillon (0059899)
Jeff M. Smith (0096018)
**SHUMAKER, LOOP & KENDRICK, LLP**
1000 Jackson Street
Toledo, OH 43604
Telephone:      (419) 241-9000
Facsimile:      (419) 241-6894
Email:          tdillon@shumaker.com
                jmsmith@shumaker.com

Michelle N. Lipkowitz (admitted *pro hac vice*)
Castell Abner, III (admitted *pro hac vice*)
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
555 12th Street, NW
11th Floor
Washington, DC 20004
(202) 434-7300
MNLipkowitz@Mintz.com
CAbner@Mintz.com
*Attorneys for Defendant*
*Solvenz Server Farms IV, LLC*

16

**<u>CERTIFICATE OF SERVICE</u>**

WE HEREBY CERTIFY that on April 8, 2026, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Thomas P. Dillon*

Thomas P. Dillon (0059899)
Jeff M. Smith (0096018)
**SHUMAKER, LOOP & KENDRICK, LLP**

*Attorneys for Defendant*
*Solvenz Server Farms IV, LLC*

17